**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Michael D. Tucker,

    Plaintiff,

v.

United States of America; Director of Bureau of Prisons; Warden Wendy J. Roal, in their Individual and Official capacities; Ms. Rhodes, Assistant Warden, in their Individual and Official capacities; Mr. Schappaugh, H.S.A., in their Individual and Official capacities; Ms. Lind, RN, in their Individual and Official capacities; Mr. Votava, RN, in their Individual and Official capacities; Dr. Paul Harvey, MD-CD, in their Individual and Official capacities; Ms. Hunter, PA-C, in their Individual and Official capacities; Ms. Floyd, PA-C, in their Individual and Official capacities; Mr. Hastings, EMT, in their Individual and Official capacities; Mr. White, Medical Records, in their Individual and Official capacities; and Government Officials, Known and Unknown, in their Individual and Official capacities;

    Defendants.

Civ. No. 09-1862 (DWF/JJK)

**REPORT AND RECOMMENDATION**

Michael D. Tucker, 3460 Golfview Drive #2201, Eagan, MN 55123, *pro se*.

David W. Fuller, Esq., Assistant United States Attorney, counsel for Defendants.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before this Court on Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 8). The motion has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons that follow, this Court recommends that Defendants' motion be granted and this case be dismissed.

## BACKGROUND

### I. Factual Background

In this action, Plaintiff seeks injunctive relief, claiming that Defendants have been deliberately indifferent to his serious medical needs and that he was subjected to cruel and unusual punishment while he was confined at the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth"). (Doc. No. 1, Compl. ¶¶ 9-18.) Specifically, he asserts that FPC-Duluth medical staff repeatedly denied him the pain medication he needed for severe back pain, and that on another occasion he refused to accept dosages of pain medication that were excessive for his condition. (*Id.* ¶¶ 9-12.) Plaintiff also alleges that FPC-Duluth medical staff violated his constitutional rights by refusing to provide him with antiviral treatment for Hepatitis C, a condition he informed staff he had upon arrival at the facility. (*Id.* ¶ 13.) According to Plaintiff, his attempts to address this lack of treatment through the prison's administrative-remedy program were unsuccessful. (*Id.* ¶¶ 14-15.) And finally, Plaintiff alleges that he was given other medication to

which he had allergic reactions and other side effects. (*Id.* ¶ 17.) To remedy these asserted constitutional violations, Plaintiff requests that this Court (1) enjoin Defendants from continuing to disregard his medical needs; (2) grant Plaintiff immediate release from incarceration so that he can obtain adequate medical care; and (3) order Defendants to provide Plaintiff with the medication he seeks to treat his Hepatitis C and back pain. (Compl., Request for Relief ¶¶ 2-5.)

### A. Plaintiff's Complaints of Pain and Defendants' Treatment

Plaintiff arrived at FPC-Duluth on January 5, 2009, and was examined by Defendant Adam Hastings, who is an Emergency Medical Technician. (Doc. No. 14, Decl. of Adam Hastings ("Hastings Decl.") ¶ 2.) At that time, Hastings told Plaintiff how to request medical care at FPC-Duluth. (*Id.* ¶ 3.) Hastings explains in his affidavit that he did not refuse to provide medication to Plaintiff in August 2009 because Plaintiff never identified the medication he was supposedly seeking and Hastings was unaware of any serious medical condition for which Plaintiff was seeking medication at that time. (*Id.* ¶ 4.)

On January 12, 2009, Plaintiff requested Oxycodone, a narcotic pain medication, to treat his pain. (Doc. No. 16, Decl. of Dr. Paul Harvey ("Harvey Decl.") ¶ 9.) FPC-Duluth's Acting Clinical Director, Defendant Dr. Paul Harvey, prescribed Plaintiff a limited dosage of Oxycodone to be taken every other day for sixteen days in light of his medical judgment that other medications would provide sufficient pain relief without risking long-term narcotics addiction. (*Id.*) Two days later, Plaintiff told Defendant Renee Hunter, a physician's assistant,

3

that he was "dying" from severe pain because he fell off his bed. (*Id.*)
Dr. Harvey did not change his prescription plan for Plaintiff because Plaintiff reported that no fractures occurred and because Plaintiff was still subject to the earlier tapered Oxycodone regimen. (*Id.*)

On January 21, 2009, Plaintiff complained to Ms. Hunter about his pain and explained that he was allergic to the drug Elavil, which was prescribed for Plaintiff's pain. (*Id.* ¶ 10.) Dr. Harvey explains that Ms. Hunter's notes indicate that Plaintiff had received narcotics for a substantial period of time prior to his federal imprisonment because he had complained of allergies to every non-narcotic medication. (*Id.*; *see also* Doc. No. 12, Decl. of Brian Votava ("Votava Decl.") ¶ 3.)[1] Ms. Hunter ordered X-rays, which showed that Plaintiff suffered only mild degenerative changes in Plaintiff's spine. (Harvey Decl. ¶ 10.)

On January 23, 2009, Plaintiff sent Ms. Hunter an Inmate Request to Staff form complaining that no action had been taken regarding his Hepatitis C and that Ms. Hunter was ignoring Plaintiff's pain. (Compl., Attach. 2, at 13.) On January 29, 2009, Ms. Hunter responded by informing Plaintiff that if he wished to discuss his concerns, he could do so by reporting to sick call and making an appointment. (*Id.*) On March 3, 2009, Hunter requested that Plaintiff receive Acetaminophen or Ibuprofen for pain relief. (Harvey Decl. ¶ 10.) Dr. Harvey

---

[1] Plaintiff's pre-incarceration medical records are not inconsistent with the medical history presented by Defendants. (*See generally* Compl., Attach. 1, *passim*.)

4

explained that although Plaintiff had been prescribed Elavil for pain relief, he signed a refusal form for that prescription on March 13, 2009. (*Id.*)

On April 7, 2009, Plaintiff complained about lower back pain to Defendant Chris Russell, a physician's assistant, and requested medication from Mr. Russell. (*Id.* ¶ 11.) Mr. Russell advised Plaintiff to cease activities that caused him pain and to alternate heat and ice on any affected area to obtain comfort. (*Id.*) Dr. Harvey prescribed Plaintiff a non-steroidal anti-inflammatory medication known as Naproxen for Plaintiff's pain. (*Id.*)

In June 2009, Plaintiff complained to FPC-Duluth staff about pain he experienced while walking, but other prison staff had observed Plaintiff walking around the cafeteria without difficulty. (Harvey Decl. ¶ 13.) Plaintiff was allowed to use a lower bunk bed on the ground floor, wear soft shoes, and have an extra pillow as a result of his complaints. (*Id.*) Plaintiff then complained again of severe back pain in mid-July 2009, and Defendant Robin Floyd, a physician's assistant, noted that Plaintiff had a muscle spasm, but that Plaintiff "softly whistled to himself when she turned away from him." (*Id.*) Plaintiff again complained to Ms. Floyd in July 2009 that he was experiencing headaches, numbness in his face, right arm, left leg, right back, and right chest, and having problems swallowing and with an enlarged liver. (*Id.*) Ms. Floyd referred the complaint to Dr. Harvey, and Dr. Harvey explained to Plaintiff that "he did not receive continual access to narcotics after he was confined at [FPC-Duluth]" because it was in his best interest to avoid long-term use of narcotics based on

5

his history of substance abuse and the "lack of objective evidence corroborating his complaints of extreme pain."  (*Id.*)

### B. Plaintiff's Complaints of Hepatitis C and Defendants' Treatment

Following a liver biopsy in January 2008, but prior to his arrival at FPC-Duluth, Plaintiff had been diagnosed with Hepatitis C.  (Harvey Decl. ¶ 6.)  Dr. Harvey explains that Plaintiff's specific form of Hepatitis C has a reduced chance of successful treatment with antiviral treatment.  (*Id.*)  Plaintiff's previous medical providers, however, had ordered certain antiviral medications for Plaintiff in April 2008, after educating Plaintiff about the treatment.  (*Id.*)  By May 18, 2008, an employee for Plaintiff's medical-care provider had noted that the prescriptions for antiviral treatment had been discontinued.  (*Id.*)

Plaintiff asserts that Dr. Harvey did not prescribe any antiviral medication for Plaintiff's Hepatitis C upon his arrival at FPC-Duluth in January 2009.  (Hastings Decl. ¶ 3.)  On April 22, 2009, Dr. Harvey explained to Plaintiff the BOP's limitations in providing antiviral treatment for Hepatitis C.  (Harvey Decl. ¶ 15.)  Dr. Harvey asserts that this discussion of side effects included explanations that antiviral treatment can cause "mental problems (including suicide) and physical symptoms that may include headaches, muscle aches, extreme fatigue, fever, nausea, loss of appetite, high blood sugar/diabetes, skin

6

rash/psoriasis, kidney problems, thyroid problems and arthritis." (*Id.* ¶ 16.)[2]

Dr. Harvey explains in his declaration that the typical antiviral treatment for Plaintiff's type of Hepatitis C lasts forty-eight weeks, and by the time FPC-Duluth received Plaintiff's medical records, Plaintiff had less than forty-eight weeks remaining on his sentence. (*Id.*) Also on April 22, 2009, Dr. Harvey told Plaintiff that he had yet to receive Plaintiff's private medical records, and he explained that he would review them when they arrived. (*Id.* ¶ 15.)

Earlier in April, Plaintiff sent the FPC-Duluth Warden an Inmate Request to Staff form indicating that he had not received treatment for his Hepatitis C. (Compl., Attach. 2 at 11.) On April 23, 2009, Defendant Acting Warden Theresa Cozza-Rhodes responded to Plaintiff's complaint regarding treatment of his Hepatitis C. (*Id.* at 12.) Acting Warden Cozza-Rhodes explained that the Health Service Department had requested Plaintiff's medical records on January 12, 2009, but had not yet received any of his medical records. (*Id.*) The Acting Warden also informed Plaintiff that blood had been obtained from Plaintiff in February to determine the type and viral load associated with his Hepatitis C

---

[2] These side effects from antiviral treatment concerned Dr. Harvey because another doctor had determined that plaintiff had a narcissistic personality disorder and some evidence of mood disorder. (Harvey Decl. ¶ 17.) Plaintiff had been prescribed Prozac to treat these mental-health diagnoses, but he refused to take them by signing a form on May 28, 2009. (*Id.*) After Dr. Harvey again prescribed Prozac for Plaintiff on August 7, 2009, in response to Plaintiff's follow-up with a mental-health professional, Plaintiff requested to be taken off all medication, and ultimately on August 19, 2009, Dr. Harvey ended the prescription for Prozac. (*Id.*; *see also* Doc. No. 15, Decl. of Wendy Roal ("Roal Decl.") ¶ 4, Attach. B at 2.)

7

condition, and told Plaintiff that a consultation had been submitted to the Clinical Director for treatment. (*Id.*)

Because of the side-effects and Plaintiff's refusal of treatment for related mental-health conditions, Dr. Harvey concluded that antiviral treatment would not be appropriate for Plaintiff. (Harvey Decl. ¶ 18.) Dr. Harvey explained that (because of Plaintiff's impending release date) FPC-Duluth officials would be unable to monitor Plaintiff's condition for twenty-eight continuous weeks "to determine if he experienced severe side effects from antiviral treatment." (*Id.*)

Plaintiff's continued complaints of pain associated with his liver condition resulted in a liver biopsy being conducted on Plaintiff on October 30, 2009. (*Id.*) Dr. Harvey concluded that the results of the biopsy showed "relative stability" in Plaintiff's condition. (*Id.*; *see also* Doc. No. 11, Decl. of Bryan White ("White Decl.") ¶ 10.) The biopsy results were nevertheless presented to the Bureau of Prisons Medical Director Jeffrey Allen who approved antiviral treatment for Plaintiff. (Doc. No. 10, Decl. of Dennis Bitz ("Bitz Decl.") ¶ 2.) In November 2009, after the treatment was approved, Defendant Health Services Administrator Bryan White discussed the antiviral treatment with Plaintiff. (*Id.*, Attach. C at 1.) Mr. White explained to Plaintiff that the treatment was not advisable if Plaintiff were to go into a halfway house in February 2010, which was Plaintiff's scheduled date for such placement. (*Id.*) Initially, Plaintiff agreed to forego halfway-house placement and opted to begin treatment. (*Id.*) However, on December 2, 2009, Dr. Benjamin Rice discussed the antiviral treatment with

8

Plaintiff again, and Plaintiff expressed reservations about complying with the terms of the treatment and the effect on his halfway-house placement. (*Id.*, Attach. C at 2.) Dr. Rice informed Plaintiff that the Bureau of Prisons would attempt to rectify the halfway-house placement if Plaintiff were able to secure treatment with the help of local social services. (*Id.*) Plaintiff then "refused the treatment in front of a witness but would not sign the refusal form." (*Id.*) Plaintiff's subsequent complaint via an Inmate Request to Staff form regarding this series of events was eventually denied. (*Id.* ¶ 4, Attach. D.)

## II. Procedural Background

Plaintiff filed this lawsuit on July 16, 2009. (Compl.) On December 28, 2009, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. (Doc. No. 8.) Defendants argue that Plaintiff's Complaint should be dismissed on the following grounds: (1) Plaintiff's requests for injunctive relief are not available against Defendants in their individual capacities; (2) Plaintiff has failed to state a claim for relief; and (3) Plaintiff's claims for injunctive relief are moot. (Doc. No. 9, Defs.' Mem. of Law in Supp. of Mot. to Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mem.") 2, 14-23.) Alternatively, Defendants argue that they are entitled to summary judgment based on the factual materials that Defendants submitted along with their motion. (*Id.* at 23-26.)

On January 20, 2010, Plaintiff moved for a stay of the proceedings until May 19, 2010, or, in the alternative, for the case against the individual Defendants to be dismissed without prejudice so that he could bring the case at a

9

later time.  (Doc. No. 19.)  This Court granted Plaintiff an extension of time to respond to Defendants' motion to dismiss, declined ruling on his request for a stay, solicited a response from Defendants to such request, and informed the parties that it would entertain a stipulation of dismissal without prejudice.  (Doc. No. 20.)  After Defendants responded in opposition to Plaintiff's request that the proceedings be stayed, this Court denied Plaintiff's request.  (Doc. No. 22.)

On March 29, 2010, this Court ordered Defendants to report on Plaintiff's custody status, and given Plaintiff's impending release from incarceration on April 8, 2010, this Court instructed Plaintiff to show cause why his case should not be dismissed as moot.  (Doc. No. 27.)  On April 9, 2010, Defendants responded and explained that Plaintiff is currently confined in a Residential Reentry Center ("RRC") with an expected release date of June 3, 2010, and was no longer housed at FPC-Duluth.  (Doc. No. 29.)  Defendants also explained that on March 5, 2010, following reports that Plaintiff used drugs while in the RRC, Plaintiff was returned to a more secure location—the Scott County Jail.  (*Id.* at 2.)  Until Plaintiff's June 3, 2010 release date, Defendants explain that he is still considered to be in the custody of the Bureau of Prisons ("BOP").  (*Id.*)  In response to the Court's March 29, 2010 Order to Show Cause, Plaintiff filed a letter complaining that the BOP continues to refuse him treatment for his Hepatitis C now that he is in Scott County Jail.  (Doc. No. 28.)

## DISCUSSION

**I.  Standard of Review**

Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(6) or for summary judgment under Fed. R. Civ. P. 56.  A civil complaint will be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (noting that "the complaint must allege facts, which if true, state a claim as a matter of law").

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  [ *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).]  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*, at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*, at 557 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

A motion to dismiss can be converted to a Rule 56 motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court" and all parties receive an opportunity to present material pertinent to

11

the motion.  Fed. R. Civ. P. 12(d).  Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion.  *Id.* at 255.

    Here, Defendants have submitted materials outside the Complaint in support of their alternative motion for summary judgment, and Plaintiff has provided evidentiary material attached to his Complaint.  In responding to Defendants' motion and this Court's Order to Show Cause, Plaintiff has had an opportunity to submit additional factual material, but has chosen not to do so.  Because the parties have both submitted evidentiary material, and Plaintiff has

been provided with the opportunity to present any additional material pertinent to the motion, this Court will convert Defendants' motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); *see also Becerra v. Symmes*, Civil No. 08-5358 (JMR/JJG), 2010 WL 489513, at *2 (D. Minn. Feb. 4, 2010) (converting motion to dismiss to summary judgment where plaintiff had "ample notice that the defendants are seeking summary judgment").

## II.    Analysis

This Court conducted a careful review of the record and concludes that Defendants are entitled to summary judgment.[3] Plaintiff's claims regarding the treatment of his chronic-pain condition and his Hepatitis C are best understood as claims that Defendants have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's ban on cruel and unusual punishments." *Krout v. Goemmer*, 583 F.3d 557, 566 (8th Cir. 2009). Such claims have both an objective and subjective component, requiring a plaintiff to show not only that he or she suffered from one or more objectively

---

[3] Defendants have argued that Plaintiff's individual-capacity claims for injunctive relief must be dismissed because the Eighth Circuit has never recognized a *Bivens* claim for injunctive-relief against prison officials in their individual capacities. This Court need not reach this argument because it has concluded that Plaintiff's deliberate-indifference claims lack merit. This Court has also not reached the issue of qualified immunity with respect to the individual-capacity clams because all of Plaintiff's claims fail on the merits.

13

serious medical needs, but also that the prison officials actually knew of, but deliberately disregarded, such medical needs. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under the subjective component, the evidence must show that the prison officials recognized the existence of a substantial risk of harm and that they knew their conduct was inappropriate in light of that risk. *Gregoire v. Class*, 236 F.3d 413, 418 & n.3 (8th Cir. 2000). Notably, a difference of opinion between prison officials and the plaintiff regarding the appropriate course of treatment does not amount to a violation of the Eighth Amendment. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Further, "[d]eliberate indifference is akin to criminal recklessness, which demands more than mere negligent misconduct." *Popalii v. Correctional Med. Svcs.*, 512 F.3d 488, 499 (8th Cir. 2008).

### A. Hepatitis C Claim

There is no indication in the record that any Defendant ever acted with deliberate disregard of Plaintiff's serious medical condition of Hepatitis C. Plaintiff has presented no evidence that would permit a conclusion that he has been deliberately denied care for Hepatitis C. Rather, the record plainly reflects that each time Plaintiff sought treatment for his Hepatitis C, the medical officials at FPC-Duluth provided him with careful medical attention and discussed with him the reasons why he was not being provided the antiviral treatment he wanted. FPC-Duluth medical staff determined that Plaintiff was not a good candidate for antiviral treatment because of concerns regarding his mental-health

diagnoses and the serious complications associated with antiviral treatment. Plaintiff has only shown that he disagreed with FPC-Duluth officials' decisions on the best way to treat his condition. And he has not presented any verifiable medical evidence that shows that he was harmed by not receiving the antiviral treatment. *See Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008) (noting that prisoner's disagreement with the course of treatment received after diagnosis with Hepatitis C did not rise to the level of an Eighth Amendment violation); *Rowe v. Norris*, 198 F. App'x 579, 581 (8th Cir. 2006) (affirming district court's dismissal of deliberate-indifference claim where plaintiff raised only a difference of opinion regarding treatment and provided no evidence that he was harmed by denial of particular course of treatment for Hepatitis C).

Moreover, the FPC-Duluth officials referred the decision for approval of antiviral treatment to the head of the BOP's medical program, who eventually *approved* Plaintiff for antiviral treatment. Thereafter, FPC-Duluth officials explained to Plaintiff that in order to proceed with the treatment he would have to forego RRC placement so that he could be appropriately monitored during the treatment. The staff further explained that if Plaintiff were to decline the treatment and go forward with RRC placement, staff would attempt to help arrange for the antiviral treatment to go forward if Plaintiff were able to secure treatment through local social services. Plaintiff ultimately decided to forego the antiviral treatment in favor of proceeding to the RRC facility, and Plaintiff provided no evidence that he secured treatment through local social services.

Plaintiff has also not presented any evidence that any Defendant in this case has deliberately denied him medical care during his current RRC placement in Scott County Jail. Rather than demonstrating a deliberate disregard for Plaintiff's medical needs, this series of events shows that Plaintiff was actually offered the very treatment he claims he was denied and that he decided not to accept the terms on which it was offered.

Because Plaintiff has failed to present any evidence establishing a genuine issue regarding whether Defendants knew of, but deliberately disregarded his condition of Hepatitis C, summary judgment is appropriate on this claim.

    **B.**    **Pain-Medication Claim**

There is also no evidence in the record to support Plaintiff's claim that Defendants acted with deliberate disregard for his repeated complaints of pain. Rather, the objective medical evidence in the record suggests that Plaintiff's back pain was the result of mild degenerative disc problems. Given the nature of that condition and Plaintiff's history of substance abuse and prior use of narcotic drugs and medication, FPC-Duluth medical staff believed that it was medically inadvisable that Plaintiff be given long-term prescriptions of narcotic medications. Instead of prescribing such narcotics, Defendants determined that it was appropriate to treat Plaintiff's pain with substitute medications. Defendants also recommended changes in the behavior that caused Plaintiff's pain, and otherwise addressed Plaintiff's concerns without prescribing him narcotics. The fact that Plaintiff would like to have received narcotics to treat his back pain amounts to

16

nothing more than a disagreement over a treatment decision. *See Steele v. Weber*, 278 Fed. App'x. 699, 700 (8th Cir. 2008) (concluding that the record showed a mere disagreement with the course of treatment where the plaintiff disagreed with prison officials' decision that he should not receive narcotic medication in light of his medical history and needs); *Hood v. Prisoner Health Servs.*, 180 F. App'x 21, 25 (10th Cir. 2006) (concluding that prisoner who was offered alternative courses of treatment to narcotic medication prescribed before his incarceration established only a disagreement with treatment provided by prison medical staff and did not violate the Eighth Amendment). Rather than demonstrating that Defendants deliberately disregarded a serious medical need, the record shows that Defendants made a medical judgment that it was not in Plaintiff's best interest to be prescribed narcotic pain medication to treat his condition in light of his history of drug abuse and given the lack of objective medical evidence to support his complaints of debilitating pain. Therefore, Defendants' motion for summary judgment should be granted with respect to this claim as well.

## RECOMMENDATION

Based on the file and all the records therein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 8), be **GRANTED**; and

2. This case be **DISMISSED WITH PREJUDICE**.

Date: April 21, 2010

        *s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D. Minn. Loc. R 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 5, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.